UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAYMOND IZQUIERDO,

    Petitioner,

v.                            Case No: 2:19-cv-441-JES-NPM

SECRETARY, DOC,

    Respondent.
_____/

**OPINION AND ORDER**

Before the Court is Raymond Izquierdo's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #8). Izquierdo challenges his conviction and life sentence for robbery, sexual battery, and kidnapping.

**I.    Background**

The State of Florida charged Izquierdo with five felonies after he walked into a massage parlor with a gun, robbed an employee, forced her to perform oral sex, and kidnapped her. (Doc. #18-2 at 2-3). Surveillance footage captured the events. (Id. at 48). Following his arrest, Izquierdo admitted he used a stolen rifle to rob the victim but claimed the oral sex was consensual. (Id. at 81-82). On the morning of trial, Izquierdo entered a negotiated plea. He pled guilty to robbery with a firearm, kidnapping, and sexual battery, and the State agreed to nolle pross

charges for possession of a firearm by a convicted felon and aggravated assault with a firearm. (Id. at 28). The trial court sentenced Izquierdo to life imprisonment. (Id. at 99).

Izquierdo did not appeal his conviction or sentence. He filed a motion for postconviction relief (Id. at 129), which the postconviction court summarily denied (Id. at 201-4). Izquierdo then filed an amended motion for postconviction relief. (Id. at 247). The postconviction court denied it after appointing Izquierdo counsel and holding an evidentiary hearing. (Doc. #18-3 at 86-93). The Second District Court of Appeal of Florida affirmed without a written opinion. (Id. at 302). Izquierdo's federal Habeas Petition timely followed.

## II. Applicable Habeas Law

### a. AEDPA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either:  (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the

petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

4

**b. Exhaustion and Procedural Default**

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

Procedural defaults generally arise in two ways:

> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." Id. (citing Coleman v. Thompson, 501

U.S. 722, 749-50 (1991)).

### c. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Id.

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Sealey v. Warden, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting Strickland, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting Harrington, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Id.

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional

6

errors, the result of the proceeding would have been different." Sealey, 954 F.3d at 1355 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The critical question on federal habeas review is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Id. (quoting Knowles v. Mirazayance, 556 U.S. 111, 123 (2009)).

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." Sealey, 954 F.3d at 1355. And "[w]hile the Strickland standard is itself hard to meet, 'establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.'" Id. (quoting Harrington, 562 U.S. at 105).

**III. Analysis**

**a. Ground 1: The charging Information was defective.**

Izquierdo argues the State's Information was defective for two reasons: (1) the victim's name was redacted; and (2) the State failed to amend the information when the victim changed her name.

The postconviction court correctly denied this ground because "a claim alleging a defect in the charging instrument must be raised on direct appeal and are [sic] barred in postconviction proceedings." (Doc. #18-2 at 203). Because the postconviction court found this ground barred by an independent and adequate state rule, Izquierdo is barred from asserting it here.

Even if this ground was not procedurally barred, it is meritless. The sufficiency of a charging document can only warrant federal habeas relief if it was so deficient that the convicting court was deprived of jurisdiction. <u>Williams v. Sec'y, Fla. Dep't of Corr.</u>, 496 F. App'x 20, 23 (11th Cir. 2012). Izquierdo's first claim is conclusively refuted by the record. The victim's name is not redacted in the Information (Doc. #18-2 at 2). As for his second claim, the Information adequately notified Izquierdo of the charges against him, and the State's failure to amend the Information when the victim changed her name did not deprive the court of jurisdiction. Ground 1 is denied.

> b. **Ground 2: The sentencing judge failed to consider mitigating circumstances and threatened increased prison time if Izquierdo went to trial**.

There are two parts to this ground, and the record refutes both. During the plea colloquy, the court properly ensured that Izquierdo understood the ramifications of his decision, including the maximum sentences he could receive if he went to trial. (Doc.

8

#18-2 at 19-20). The judge did not make any statements that could reasonably be interpreted as a threat. When asked whether anyone forced or threatened him to enter his plea, Izquierdo responded, "No, ma'am." (Id. at 31). After the trial court sentenced Izquierdo to life imprisonment, he filed a Motion to Mitigate. (Doc. #18-2 at 112). The court held a mitigation hearing, and Izquierdo requested a lighter sentence and testified about childhood abuse, alcoholism, and his desire to raise his daughter. (Id. at 118-120). The court declined to reduce the sentence *after* hearing Izquierdo's mitigation testimony. (Id. at 127).

The Court denies Ground 2 because it is frivolous and refuted by the record.

### c. Ground 3: Trial counsel incorrectly advised Izquierdo about the sentence he would receive.

Izquierdo claims his trial counsel, Rex Darrow, advised that he would not receive a life sentence if he pled guilty. The postconviction court held an evidentiary hearing on this ground. After hearing testimony from Izquierdo, Darrow, and co-counsel Connie Kelley, the court found as follows:

> 6…Defendant testified that he had multiple attorneys represent him throughout the pendency of this case. Defendant testified that he understood he was facing a maximum of life imprisonment for his charges. Defendant testified that he discussed his option on the morning of trial with Mr. Darrow and that Defendant was set on going to trial. Defendant testified that Mr. Darrow advised him that if he lost at trial he would get life

9

imprisonment or he could enter a plea to the Court and receive anywhere from 16 years to life imprisonment. Defendant testified that Mr. Darrow advised him that he would not get life if he entered an open plea to the Court. Based on this advice, Defendant entered an open plea to the Court on the morning trial was set to begin. On cross-examination, Defendant stated that his defense, if he proceeded to trial, would be that the victim consented to the sexual encounter. Defendant admitted that Mr. Darrow advised him on the morning of the sentencing hearing that Defendant would receive a life sentence because the Judge was aware of his prior convictions.

7. Attorney Rexford Darrow testified that Defendant felt he had no choice but to proceed to trial. Mr. Darrow testified that the State had a strong case and was not willing to make a plea offer until the morning of trial. Mr. Darrow stated that there was no agreement as to a term of years, but the State would nolle pros two counts for an open plea, which would ultimately lower the minimum on the scoresheet. Mr. Darrow explained to Defendant that the maximum sentence was still life imprisonment. Mr. Darrow was prepared to take the case to trial but was concerned what the Judge would hear. Mr. Darrow admitted that the defense strategy was to concede Defendant's guilt as to the robbery charge, but argue consent as to the kidnapping and sexual battery charges. Mr. Darrow stated that he waived a pre-sentence investigation report because of Defendant's prior conviction, which would be bad for Defendant. Mr. Darrow testified that he made Defendant no promises or guarantees about the sentence and made no promise that the Judge would not find out Defendant's prior offense. Mr. Darrow testified on cross-examination that a plea would increase Defendant's chances of getting a lower sentence. Mr. Darrow stated that the plea was in Defendant's best interest because it kept bad facts out. Mr. Darrow testified that the sentencing hearing went badly because the Court viewed a video of the incident, which depicted Defendant possessing a weapon during the kidnapping and sexual battery of the victim. Mr. Darrow advised Defendant that he could file a postconviction motion.

8. Ms. Kelley testified that she was present during the conversations between Defendant and Mr. Darrow prior to the entry of the pela. Although Ms. Kelly [sic] could only hear Mr. Darrow's statements, she testified that Mr. Darrow made no promise of a 25 year sentence and advised Defendant that he could get life imprisonment.

9. The Court finds that Defendant was advised as to the maximum sentence he faced if he was found guilty at trial and entered his open plea to the Court because it was in his best interest at the time. If a defendant consents to defense counsel's strategy after it has been explained to him, it will be difficult to establish a claim for ineffective assistance of counsel. Stein v. State, 995 So. 2d 329 (Fla. 2008). If the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel. Nixon v. Singletary, 758 So. 2d 618 (Fla. 2000). The record demonstrates overwhelming evidence that likely would have resulted in a conviction if Defendant had proceeded to trial. The Court heard testimony of the victim that the sexual acts were not consensual, the Court viewed a video of the incident depicting the victim being kidnapped at gun point, and the fact that inculpatory DNA evidence existed.

(Doc. #18-3 at 88-90). These factual findings are presumed correct, and Izquierdo must rebut them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). He has not met that burden. On the contrary, the record supports the postconviction court's factual findings.

The postconviction court then applied Strickland: "Mr. Darrow's advice cannot be deemed to be outside the range of alternative defense strategies available to counsel in a case where proof of defendant's guilt is strong or overwhelming. The Court finds counsel's service to Defendant to have been neither deficient

nor prejudicial[.]" (Doc. #18-3 at 90).

To succeed on this ground, Izquierdo must show that the court "blunder[ed] so badly that every fairminded jurist would disagree[.]" Mays, supra. He cannot. In fact, Izquierdo himself testified that he knew the risks of a guilty plea:

> MR. MARESCA [prosecutor]:…And I've indicated that we are not making any agreement to the sentencing. We're going to be having a full-blown sentencing hearing. And I've already indicated that we're seeking life.
>
> MR. DARROW: He understands that.
>
> MR. MARESCA: That's the agreement.
>
> THE COURT: Do you understand that, Mr. Izquierdo?
>
> MR. IZQUIERDO: Yes, ma'am.

(Doc. #18-2 at 30-31). Ground 3 is denied.

### d. Ground 4: Trial counsel failed to file a motion to suppress.

Izquierdo argues that had his attorney filed a motion to suppress the firearm, the State would have been unable to convict him on any crime involving a gun, and he would not have pled guilty. (Doc. #20 at 6-7). The postconviction court denied this ground because Izquierdo did not "demonstrate[] any meritorious ground upon which counsel could have filed a motion to suppress the weapon." (Doc. #18-3 at 91). That remains true here. Police recovered the firearm used in the crime because Izquierdo told them where to find it. (Doc. #18-2 at 42-43). Izquierdo cannot

12

satisfy either Strickland prong because a motion to suppress would have been meritless. And even if Izquierdo could have suppressed the gun, the crime was caught on security footage. The Court denies Ground 4.

### e. Ground 5: Post-conviction counsel failed to locate and subpoena a witness.

Izquierdo argues attorney Nico Vitale failed to locate and subpoena a witness to corroborate Izquierdo's testimony at the postconviction evidentiary hearing. Federal law expressly prohibits habeas relief on this ground:

> The ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

28 U.S.C. § 2254(i). Ground 5 is denied.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

(2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Izquierdo has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is

**ORDERED:**

Petitioner Raymond Izquierdo's amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 8) is **DENIED**. The Clerk is **DIRECTED** to terminate all pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on June __23rd__, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record